**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Allen R. BULLER, Defendant
and Appellant.**

**No. 17493.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 1992.

Decided April 29, 1992.

Mark W. Barnett, Atty. Gen., William J. Nevin, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

William A. Moore, Scotland, for defendant and appellant.

SABERS, Justice.

Buller appeals his conviction for first degree rape of his four–year–old son. We affirm.

## FACTS

Allen Buller (Buller) married in 1973. He and his wife had five children. Buller's father committed acts of sexual abuse upon these five children. These acts eventually resulted in a divorce in 1989 for the Bullers.

Following the divorce, his wife sought counseling for the children from Benedictine Family Services in Yankton, S.D. The children were counseled by Rick Inhofer (Inhofer). Inhofer first met with I.B., the youngest child, on a one-to-one basis on June 29, 1989. He told Inhofer that his father touched him in his private spots with his hands, sucked on his penis, and inserted sticks and his penis in his anus. He was also counseled by Dr. Mary Curran (Curran). I.B. demonstrated to Curran, through the use of anatomically correct dolls, what was done to him. This version was similar but not identical to the statements made to Inhofer. The differences pertained to acts allegedly done to I.B. by his grandfather.

Buller was charged with first degree rape—sexual penetration of four-year-old I.B. On December 27, 1990, State moved to introduce hearsay statements made by I.B. to Inhofer and Curran. The court reserved its ruling on State's motion until the evidence could be reviewed. In a pre-trial hearing the morning of the trial on January 9, 1991, the court ruled that sufficient indicia of reliability existed and the hearsay statements would be allowed, providing I.B. testified at trial. During the three-day trial, after being qualified as competent by the court, I.B. testified to acts committed by Buller. Inhofer was allowed to testify to statements made to him by I.B. during their counseling sessions. Curran was also allowed to testify to the statements and demonstration made by I.B. during counseling with her. She further explained why I.B.'s versions of the events differed to Inhofer, herself, and the jury. On cross-

examination, Curran testified that after investigation and interviews with the alleged victim, if she concludes that no abuse occurred, then the case is often not prosecuted. Dr. Harold Mardl later testified for the defense that, in his opinion, I.B.'s characteristics did not show he was sexually abused.

The jury found Buller guilty of first degree rape. He was sentenced to 25 years in the South Dakota Penitentiary with 15 years suspended on numerous conditions. Buller appeals claiming the court erred in (1) allowing hearsay testimony under SDCL 19–16–38; (2) violating his Sixth Amendment right to confront the witnesses against him; (3) allowing expert testimony concerning rape trauma syndrome; (4) allowing Curran to comment on the credibility of I.B.; and (5) denying his motion for judgment of acquittal.[1]

### 1. HEARSAY STATEMENTS.

Buller claims the court erred in allowing Inhofer and Curran to testify to statements made by I.B. during counseling sessions due to insufficient indicia of reliability. Buller bases his argument on the court's failure to enter written findings prior to trial and the court's failure to require I.B., Inhofer and Curran to testify at the pretrial hearing. We review evidentiary rulings on the basis of abuse of discretion:

> For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. Once again, an abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.

*State v. Pfaff,* 456 N.W.2d 558, 561 (S.D. 1990) (citing *State v. Bartlett,* 411 N.W.2d 411, 414 (S.D.1987)); *see also, State v. Floody,* 481 N.W.2d 242, 249 (S.D.1992).

Out-of-court statements by a minor sexual abuse victim are admissible at trial, provided the provisions of SDCL 19–16–38 [2]

---

1. Buller's appellate counsel was not counsel at the trial level.

2. SDCL 19–16–38 provides:
   A statement made by a child under the age of ten describing any act of sexual contact or

rape performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings against the Defendant or in

are met. *See, Floody,* 481 N.W.2d at 251; *State v. Schoenwetter,* 452 N.W.2d 549, 550 (S.D.1990). No written findings were prepared by the court prior to the admission of the statements at trial. However, following examination of the case file, the Grand Jury transcript, and the records and notes of the psychologist and therapist, the court stated on the record prior to trial that:

> [T]he Court finds from the examination of this evidence that the statements made by the victim, [I.B.], to Mr. Inhofer and Dr. Curran, according to the time, content and circumstances, show the Court that there is sufficient indicia of reliability in these statements and that they will be able to testify as to those statements made during trial, providing that the child testifies which I understand he intends to do.

Thus, the court made the findings required under SDCL 19–16–38. Therefore, the actual thrust of Buller's claim is the court's pre-trial determination that sufficient indicia of reliability existed under SDCL 19–16–38.

■ The factors for determining whether hearsay statements by a sexually abused minor are sufficiently reliable for admissibility under SDCL 19–16–38 are: the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the consistency of repetition and the reliability of the assertions, and the reliability of the child witness. *Floody,* 481 N.W.2d at 251; *see also, Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638, 656 (1990); *Schoenwetter,* 452 N.W.2d at 550–51; *State v. Thompson,* 379 N.W.2d 295, 297–98 (S.D.1985); *State v. McCafferty,* 356 N.W.2d 159, 164 (S.D.1984); *State v. O'Brien,* 318 N.W.2d 108, 112 (S.D.1982).

■ Buller argues that there was insufficient evidence to determine reliability because the court erred in failing to require that I.B., Inhofer and Curran testify at the pre-trial hearing. However, SDCL 19–16–38 does not require that the child or the other witnesses testify at the pre-trial hearing. Buller claims that *Thompson* supports his argument. However, *Thompson* requires only that "the determination of reliability must be made prior to the admission of the hearsay." *Thompson,* 379 N.W.2d at 298. Buller also points to *State v. Swan,* 114 Wash.2d 613, 790 P.2d 610 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 752, 112 L.Ed.2d 772, (1991), for the requirement that witnesses must testify prior to any determination of reliability of the hearsay statements. However, in applying a statute similar to SDCL 19–16–38, the *Swan* court did not rule that the witnesses must testify at the pre-trial hearing in order to find sufficient indicia of reliability. In *Swan,* the two minor victims were determined by the court to be incompetent to testify at trial, thereby requiring corroboration before the hearsay statements were admissible. *Id.* 790 P.2d at 614.

In this case, Buller did not request that these witnesses testify at the pre-trial hearing prior to the court's determination. Although the court found sufficient indicia of reliability, it made the final ruling on the admissibility of the hearsay statements contingent on whether I.B. testified at trial. The court found I.B. competent to testify and I.B. did testify at trial. Thus, corroboration was unnecessary. *State v. Spaans,* 455 N.W.2d 596, 598 (S.D.1990).

---

any proceeding under chapter 26–8 in the courts of this state if:
 (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
 (2) The child either:
  (a) Testifies at the proceedings; or
  (b) Is unavailable as a witness.
 However, if the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars of it, including the name and address of the declarant to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

■ Buller also argues that the court, by failing to enter findings prior to admission of the hearsay statements, improperly relied upon the trial testimony of Inhofer and Curran when it prepared written findings following the trial. As indicated above, the court did make a determination on the record prior to trial that sufficient indicia of reliability existed within the evidence presented. Although no details were stated at that time, the subsequent written findings specify the factual support. Buller argues that these specifics were obtainable only from the testimony at trial. However, after reviewing the evidence available to the court at the pre-trial hearing, there is sufficient support, independent from the trial testimony, for the court's findings. Therefore, it has not been shown that the court abused its discretion in admitting I.B.'s out-of-court statements. *Floody*, 481 N.W.2d at 252.

## 2. CONFRONTATION.

■ Buller claims the court erred in allowing the hearsay testimony in violation of his Sixth Amendment right to confront witnesses against him. In *McCafferty*, basic confrontation clause analysis was set forth:

> The framers of the constitution did not intend to exclude all hearsay. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The policy behind the confrontation clause must give way to the public's interest in effective law enforcement, the probative necessities of particular cases and other policy considerations. 448 U.S. at 64, 100 S.Ct. at 2538, 65 L.Ed.2d at 606. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), controls when the declarant is available or testifies at trial. Prejudice to the defendant by admission of a child declarant's statements is reduced when the child is available for cross-examination. 8 J.JUV.L. 67 (1984).
>
> [T]he Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.
>
> 399 U.S. at 164, 90 S.Ct. at 1938, 26 L.Ed.2d at 501.

*McCafferty*, 356 N.W.2d at 162–63. However, the confrontation clause requires a finding of sufficient indicia of reliability for the hearsay statements even if the declarant is available for cross-examination. *Roberts*, 448 U.S. at 65, 100 S.Ct. at 2538–39; *Thompson*, 379 N.W.2d at 297.

■ In *Wright*, the United States Supreme Court stated that the indicia of reliability requirement can be met in two ways: (1) where the statements fall within a firmly rooted hearsay exception or (2) where it is supported by a showing of particularized guarantees of trustworthiness. *Wright*, 110 S.Ct. at 3147. SDCL 19–16–38 is not a firmly rooted hearsay exception. Therefore, to satisfy the confrontation clause requirement, the statements must be supported by a showing of particularized guarantees of trustworthiness from the totality of the circumstances surrounding the making of the statements. *Wright*, 110 S.Ct. at 3148. This court has previously held that "circumstantial guarantees of trustworthiness" and "indicia of reliability" are synonymous. *McCafferty*, 356 N.W.2d at 163. Thus, Buller's confrontation clause argument is answered by the analysis under issue 1.

Article VI, Section 7 of the South Dakota Constitution and the Sixth Amendment to the United States Constitution "both speak to the same protection." *McCafferty*, 356 N.W.2d at 164.

> It seems to be held everywhere and by all courts of last resort that 'to be confronted with the witnesses against him' and to 'meet the witness face to face' mean one and the same thing[.]

*Id.* at 164 (quoting *State v. Heffernan*, 24 S.D. 1, 123 N.W. 87, 89 (1909)). Thus, the prior analysis holds true for Buller's rights under Article VI, Section 7 of the South Dakota Constitution.

### 3. EXPERT TESTIMONY.

■ Buller claims the court erred in allowing Curran to testify as an expert on the behavioral characteristics of sexually abused children.

[T]he trial court has broad discretion concerning the qualification of experts and the admission of expert testimony. The trial court's decision as to such matters will not be reversed on appeal absent a clear showing of abuse of that discretion.

*Floody,* 481 N.W.2d at 249 (quoting *State v. Logue,* 372 N.W.2d 151, 156 (S.D.1985)). In a pre-trial motion hearing, State gave notice of its intent to introduce testimony of the characteristics and behavior patterns of sexually abused children. In response, Buller stated:

[I]f and when that does come in, I guess I can make the appropriate objection at that time ... but I guess I'll make my objection on the basis that I think it invades the province of the jury and hits on the ultimate issue.

Such a pre-trial statement does not constitute an adequate objection. In fact, the court made no ruling on an objection but simply stated:

Very well, you're informed that he's going to attempt to get that type of testimony into the record.

At trial, State introduced such testimony. However, Buller failed to object to Curran's testimony and failed to preserve this issue for appeal. *State v. Garton,* 390 N.W.2d 61, 63 (S.D.1986); *State v. Dirk,* 364 N.W.2d 117, 123 (S.D.1985); *State v. Big Head,* 363 N.W.2d 556, 563 (S.D.1985). Therefore, if any error occurred from the admission of expert testimony regarding behavior patterns of sexually abused children, it was waived. *Garton,* 390 N.W.2d at 63.

### 4. CREDIBILITY OF I.B.

Buller claims the court erred in allowing Curran to testify to the credibility of I.B. The testimony Buller now complains of came in during his cross-examination of Curran:

Q: Have you ever testified for the defense?

A: I have testified—Not in a criminal trial, I have testified for the defense in the sense that some of the adult males who have been in my perpetrators' group go to court, sometimes I testify that they have been good about coming to group and they admit what they did and some of that in terms of the judge making some kind of decision on probation or something like that. I have testified in the defense for adolescent perpetrators also in terms of the judgment, what could be done with the child and whether they need inpatient treatment or out-patient treatment. One of the things that happen is that if I interview a child and—

Q: Well, I think you have answered the question partially. But my question is, in [a] ... criminal child sexual abuse case, have you ever testified for the adult defendant?

A: The problem with that is that I don't get asked to do that. If I say the person didn't do it, the prosecutor doesn't prosecute them.

Q: Have you ever testified for an adult defendant in a criminal case?

A: No. As soon as I say to the prosecutor, "I do not find in my interviews anything that supports that this person did, and the fact that someone thought he had was a misstatement, someone didn't understand what the child was saying."

State asserts that if this testimony was improper, it was invited error.

[A] party to a criminal proceeding will not be permitted to allege an error in proceedings in the trial court in which he himself acquiesced, or which was invited or induced by him.

*State v. Stahl,* 416 N.W.2d 269, 270 (S.D. 1987); *State v. Johnson,* 272 N.W.2d 304, 306 (S.D.1978); *State v. Parker,* 263 N.W.2d 679, 684 (S.D.1978); *United States v. Garrett,* 727 F.2d 1003, 1012 (11th Cir. 1984) *aff'd* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). The defense cannot

invite error and then benefit therefrom. However, Curran's statements were not invited.

■ As shown above, Curran did not directly testify to the truthfulness of I.B.'s statements. She responded to questions regarding her past trial experience and volunteered self laudatory claims of near omniscience or omnipotence. These statements were neither responsive nor invited and *indirectly* reflected on the truthfulness of I.B.'s statements. In *Floody,* the expert testified to the spontaneity of the statements made by a victim during an interview. *Floody* held that since the expert did not *directly* testify to the truthfulness of the victim, the statements did not invade the province of the jury. *Floody,* 481 N.W.2d at 249. However, Buller did not object nor move to strike this testimony and thus failed to preserve this issue on appeal. *Garton,* 390 N.W.2d at 63; *Dirk,* 364 N.W.2d at 123; *Big Head,* 363 N.W.2d at 563.

### 5. JUDGMENT OF ACQUITTAL.

Buller's final claim is the court's denial of his motion for judgment of acquittal.

Our standard of review on a denial of a motion for judgment of acquittal is whether the state set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. *State v. Farmer,* 407 N.W.2d 821, 825 (S.D.1987). In reviewing the sufficiency of the evidence, we consider the evidence in a light most favorable to the verdict. *State v. Ashker,* 412 N.W.2d 97, 105 (S.D.1987). A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt. *Id.; State v. Andrews,* 393 N.W.2d 76, 80 (S.D.1986).

**3.** SDCL 22-22-1 states in part:

Rape is an act of sexual penetration accomplished with any person other than the actor's

*State v. Gallipo,* 460 N.W.2d 739, 742 (S.D. 1990) (quoting *State v. Blalack,* 434 N.W.2d 55, 59-60 (S.D.1988)); *see also State v. Bachman,* 446 N.W.2d 271, 274 (S.D.1989).

■ Buller argues that I.B.'s testimony was unreliable and therefore corroborating evidence was required. In *State v. Grey Owl,* 316 N.W.2d 801 (S.D.1982), we stated:

[A] person may be convicted of the crime of rape upon the uncorroborated testimony of the complaining witness, yet ... this cannot be rightfully done where, from the whole record, it appears that such testimony is unreliable, improbable, or where such witness has been fairly impeached[.]

*Id.* at 804 (quoting *State v. Fulks,* 83 S.D. 433, 160 N.W.2d 418, 420 (1968)). Buller's sole argument is that I.B.'s testimony is unreliable because of his age. The court determined I.B. to be competent to testify and also found sufficient indicia of reliability of I.B.'s out-of-court statements under SDCL 19-16-38.

I.B. testified that he was six years old, that Buller was his dad, and that Buller put his penis in his anus. Thus, I.B., a competent witness, testified to all the elements of first degree rape.[3] We find no error in the court's denial of Buller's motion for judgment of acquittal. *Gallipo,* 460 N.W.2d at 743.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Based upon my minority viewpoint and the authorities cited in *State v. Floody,* 481 N.W.2d 242, 257 (S.D.1992); *State v. Spaans,* 455 N.W.2d 596, 599 (S.D.1990); *McCafferty v. Solem,* 449 N.W.2d 590 (S.D.

spouse under any one or more of the following circumstances:

(4) Where the victim is less than ten years of age[.]

1989); *State v. Bachman,* 446 N.W.2d 271, 277 (S.D.1989); and *State v. Hallman,* 391 N.W.2d 191, 196–7 (S.D.1986), I respectfully dissent. Also, I rely upon the spirit and the holding of the majority opinion in *State v. Logue,* 372 N.W.2d 151 (S.D.1985).

Further, I base my dissent upon expressions of law and rationale found in outside jurisdictions, viz: *People v. Coleman,* 48 Cal.3d 112, 143–44, 255 Cal.Rptr. 813, 830, 768 P.2d 32, 49 (1989) (citing *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984)); *Commonwealth v. Gallagher,* 519 Pa. 291, 295–297, 547 A.2d 355, 358 (1988); *State v. Taylor,* 663 S.W.2d 235 (Mo.1984).

Buller argues that trial court improperly allowed expert testimony regarding behavior and characteristics of sexually abused children (i.e. rape trauma syndrome). In a pre-trial motion hearing, State gave notice of its intent to introduce testimony regarding the characteristics and behavior patterns of sexually abused children. Buller responded:

[I]f and when that does come in, I guess I can make the appropriate objection at that time ... *but I guess I'll make my objection on the basis that I think it invades the province of the jury and hits on the ultimate issue.*

I disagree with the majority that this does not constitute an adequate objection. I must note that the majority cites to no authority to support this proposition. I also believe that this case is distinguished from cases cited by majority, *State v. Garton; State v. Dirk* and *State v. Big Head,* in that in none of those cases did defense counsel register an objection to the proposed testimony, pre-trial, as here. Nevertheless, introduction of such testimony reaches the level of plain error, as I will discuss, infra.

In the instant case, Dr. Curran, the expert witness, testified at trial regarding her interview with I.B. Dr. Curran testified that, in her field of clinical psychology, a pattern of certain behavior and characteristics of sexually abused children has been established, *and that I.B. exhibited many of those characteristics.* During cross-examination, the further testimony was elicited from Dr. Curran:

Q: Well, I think you have answered the question partially. But my question is, in [a] ... criminal child sexual abuse case, have you ever testified for the adult defendant?

A: The problem with that is that I don't get asked to do that. *If I say the person didn't do it, the prosecutor doesn't prosecute them.*

Dr. Curran further testified directly upon the credibility of I.B. stating that "he [I.B.] has one story and that is what happened." Dr. Curran is a sister in the Catholic church and a clinical psychologist at Sacred Heart Convent in Yankton, South Dakota. Her testimony was devastating to Buller. Clad in sanctity, and making these statements, lent an aura of impeccable truth to her conclusory assertions. A jury would, necessarily, believe that her opinion begot nothing but the truth. An expert may not give an opinion as to the truthfulness of the victim's allegations. *McCafferty v. Solem,* 449 N.W.2d 590 (S.D.1989). Her testimony pierced the ruling in *United States v. Saint Pierre,* 812 F.2d 417 (8th Cir.1987). She was, in effect, testifying as to the truthfulness of the victim's allegations. Her testimony went beyond the boundaries of the holding in *State v. Spaans.*

The introduction of this testimony arises to the level of plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court. SDCL 23A–44–15. In *State v. Brammer,* 304 N.W.2d 111, 114 (S.D.1981), this Court first recognized this legislatively created plain error rule, stating "the rule must be applied cautiously and only in exceptional circumstances." *Brammer,* 304 N.W.2d at 114. This case is an exceptional circumstance. The testimony of an expert witness must not invade the province of the jury. *State v. Logue,* 377 N.W.2d 151, 157 (S.D.1985). Resolving conflicts in the evidence, *passing on the credibility of witnesses,* or weighing the evidence, are functions within the province of the jury. *Floody,* 481 N.W.2d at 257 (Henderson, J., dissenting) (citation omit-

ted). However, through the testimony cited, Dr. Curran did appropriate these functions and usurped the role of the jury. Thereby, this testimony created an aura of special reliability and trustworthiness, by enhancing and approving the credibility of the alleged victim, unfairly prejudicing Buller. *See, Bachman*, 446 N.W.2d at 278–279. In essence, Dr. Curran certified to the veracity of the allegations by the alleged victim against Buller.

Therefore, I dissent.