1998 SD 2

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**David Meyer SCOTT, Defendant and Appellant.**

**No. 20131.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 4, 1997.

Decided Jan. 7, 1998.

Rehearing Denied Feb. 12, 1998.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, for plaintiff and appellee.

Michael B. Crew, of Crew and Crew, Sioux Falls, for defendant and appellant.

PER CURIAM.

[¶ 1.]David Scott was convicted for violation of a domestic protection order under SDCL 25–10–13 when he repeatedly telephoned his wife. In this appeal, he contends that regardless of what the protection order prohibited, he cannot be convicted for anything other than acts described in SDCL 25–10–6: physical harm, bodily injury or attempts to cause physical harm or bodily injury, or the infliction of fear of imminent physical harm or bodily injury between family or household members. We affirm, concluding the protection order validly prohibited phone calls and the jury could properly find he violated the order.

### Facts

[¶ 2.]On October 13, 1995, Debra Scott was granted an ex parte temporary protection order against Scott. The parties had separated the previous month. The order contained eight specific prohibitions, two of which are relevant to this appeal:

> Defendant shall commit no acts of Domestic Abuse;
>
> . . . .
>
> Defendant shall not verbally contact Plaintiff in any manner, which includes phone contact or contact through third parties, and shall not verbally abuse or threaten Plaintiff.

Scott received service of this order the same day it was granted.

[¶ 3.]Five days later, Scott drove himself to Sioux Valley Hospital after experiencing severe chest pains. His doctors determined an angiogram, and possibly angioplasty, would be performed. Because a moderate dose of morphine had already been given Scott, the Hospital sought consent of a relative for this procedure. Although Scott's parents lived in Sioux Falls, Scott telephoned Debra at 4:20 a.m. and later at 5:00 a.m. to ask that she sign the consent form. During the first call, Scott told Debra he was at the hospital having a heart attack and could die any minute. Debra replied she was the wrong person to call, to please stop calling her, and hung up.

During the second call, Scott told Debra he was having a heart attack, had pain in his chest and wanted her to come to the hospital. Debra asked him to please stop calling and hung up.

[¶ 4.]A third call came to Debra from Scott at 5:20 p.m. after she had returned home from work. She hung up as soon as she recognized Scott's voice. One minute later Scott called again, told her he was at the hospital, had suffered a heart attack, and asked her to take care of the animals at his home. Debra replied they would be cared for and asked Scott to stop calling her. Scott then became angry and asked: "Is this the woman who should have been here this morning? Is this the woman who the nurses said would surely show up? Is this the woman who is going to church tonight to pray?" Scott then informed Debra he was going to ask the judge to order psychological testing of both of them and that he would pass and she would not. Debra hung up and called the police.

[¶ 5.]At 5:23 p.m., Scott called again. Debra put the receiver down when she recognized his voice but did not hang up. A police officer then arrived and advised Debra to hang up her phone. At 5:45 p.m., Scott called again. The officer advised her to hang up, which she did. One minute later, Scott called again and this time the police officer answered the phone.

[¶ 6.]In magistrate court, a jury found Scott guilty of violating the protection order and SDCL 25–10–13. He appealed to the circuit court which affirmed the judgment and sentence. He now appeals to this Court raising issues of sufficiency of the evidence and incorrect jury instructions.[*]

### Analysis and Decision

[¶ 7.]Scott makes no claim that the temporary protection order was unconstitutionally vague or that the domestic abuse laws, SDCL Ch. 25–10, are unconstitutional. *See generally State v. Hauge*, 1996 SD 48, 547 N.W.2d 173. He admits his conduct violated the terms of the order prohibiting telephone

[*] Scott's arguments regarding sufficiency of the evidence and jury instructions assert the same

contact but argues he never violated SDCL 25–10–13. This statute provides:

> If a temporary protection order or a protection order is granted pursuant to this chapter, and the respondent or person to be restrained knows of the order, violation of the order is a Class 1 misdemeanor. If any violation of this section constitutes an assault pursuant to § 22–18–1.1, the violation is a Class 6 felony. Any proceeding under this chapter is in addition to other civil or criminal remedies.

Essentially, Scott offers a circular argument that his telephone calls cannot be the basis for a violation of SDCL 25–10–13 under the present statutory scheme because the order was granted under SDCL 25–10–6 which prohibits acts of domestic abuse, defined by statute as "physical harm, bodily injury or attempts to cause physical harm or bodily injury, or the infliction of fear of imminent physical harm or bodily injury between family or household members[.]" SDCL 25–10–1(1) and (4). Under Scott's argument, SDCL 25–10–1(4) only permits temporary protection orders to prohibit acts of domestic abuse or entry into the dwelling of the protected person. Scott claims that since he did not physically harm Debra or inflict fear of imminent harm or physically invade Debra's home he cannot have violated SDCL 25–10–13.

[¶ 8.]SDCL 25–10–6, which governs ex parte temporary protection orders, provides:

> When an affidavit filed with an application under this chapter alleges that immediate and irreparable injury, loss or damage will result before an adverse party or his attorney can be heard in opposition, the court may grant an ex parte temporary protection order pending a full hearing and *granting relief as the court deems proper, including* an order:
>
> (1) Restraining any family or household member from committing acts of domestic abuse;
>
> (2) Excluding any family or household member from the dwelling or the residence of the petitioner.

legal basis and will be discussed together.

(emphasis added). This is the first time we have construed this statute. *See State v. Stahl*, 416 N.W.2d 269 (S.D.1987) (involving a temporary protection order granted pursuant to SDCL 25–10–6 but discussing whether such order can provide the basis for criminal complaint where parties stipulated to continue order in lieu of a formal hearing).

[¶ 9.]The plain language of the statute demonstrates that the court, in granting the order, clearly is not limited to prohibiting only acts of domestic abuse or visits to the protectee's dwelling place. In a decision involving protection orders pursuant to SDCL 25–10–5, we recently noted that "[j]udges must exercise broad authority to fashion necessary safeguards for the unpredictable insecurities victims of domestic abuse often face." *Hauge*, 1996 SD 48, ¶ 8, 547 N.W.2d at 176. Scott's argument fails to persuade us that this same broad authority does not apply to ex parte temporary protection orders granted under SDCL 25–10–6.

[¶ 10.]Nothing in the record suggests, nor does Scott claim, this order was improvidently granted. The court made a finding of domestic abuse, as defined by SDCL 25–10–1(1), before granting the ex parte temporary protection order. The order enumerates the conduct prohibited; acts of domestic abuse are among these. Seven other forms of conduct are also prohibited in the order. Performance by Scott of any of these eight acts would violate the protection order. The State need not show an act of domestic violence for there to be a violation of the existing protection order which, in turn, constitutes a violation of SDCL 25–10–13. The jury instructions correctly stated the law and there was sufficient evidence to convict in this case.

[¶ 11.]Affirmed.

[¶ 12.] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., participating.